**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**U.S. BANK NATIONAL ASSOCIATION,**
*as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-KX03*,

                        **Plaintiff,**

   vs.                                      3:23-CV-928
                                                  (MAD/ML)

**CHENANGO PLACE, LLC, RACHEL SCHIFF, ABRAHAM GROSS, and BROOME COUNTY INDUSTRIAL DEVELOPMENT AGENCY,**

                        **Defendants.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **BALLARD SPAHR LLP**<br>1675 Broadway, 19th Floor<br>New York, New York 10019<br>Attorneys for Plaintiff | **MARJORIE J. PEERCE, ESQ.**<br>**CELIA A. COHEN, ESQ.** |
| **BALLARD SPAHR LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, Pennsylvania 19103<br>Attorney for Plaintiff | **RAYMOND A. QUAGLIA, ESQ.** |
| **HINMAN, HOWARD & KATTELL, LLP**<br>P.O. Box 5250<br>80 Exchange Street<br>700 Security Mutual Building<br>Binghamton, New York 13902<br>Attorney for Defendants Chenango Place, LLC,<br>Rachel Schiff, and Abraham Gross | **HARVEY D. MERVIS, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

                                       **ORDER**

1

This diversity action arises out of a commercial mortgage foreclosure. *See* Dkt. No. 1. Plaintiff U.S. Bank National Association commenced the action on July 31, 2023, seeking to foreclose a mortgage on which Defendant Chenango Place, LLC ("Chenango Place") had been in default. *See id.* The mortgage encumbered Defendant Chenango Place's property at 7-9 Court Street in Binghamton, New York, *see id.* at ¶ 8, which was used as a student housing complex, *see* Dkt. No. 72 at 2 (citing Dkt. No. 68-1 at ¶ 5). Defendants Rachel Schiff and Abraham Gross are members of Chenango Place. *See* Dkt. No. 1 at ¶ 2. On April 26, 2024, as stipulated by the parties, Magistrate Judge Miroslav Lovric ordered the appointment of a receiver, Gregg Williams, to operate and manage Defendant Chenango Place's property. *See* Dkt. No. 53.

On November 1, 2024, Plaintiff moved for summary judgment, as well as a default judgment against Defendant Broome County Industrial Development Agency, *see* Dkt. No. 68, a public benefit corporation with a leasehold interest in the property at the time Plaintiff commenced the action, *see* Dkt. No. 1 at ¶ 5. Defendants did not oppose the motions. On January 10, 2025, this Court granted both motions and ordered foreclosure and sale of the property. *See* Dkt. No. 72 at 21. Judgment was entered in Plaintiff's favor, and the case was closed. *See* Dkt. No. 73. On April 24, 2025, Plaintiff purchased the property at the ordered foreclosure sale. *See* Dkt. No. 78 at ¶¶ 1-2. For a full recitation of the factual background, the parties are referred to this Court's Memorandum-Decision and Order dated January 10, 2025. *See* Dkt. No. 72.

On May 22, 2025, Plaintiff filed a motion to terminate the receivership and discharge the receiver. *See* Dkt. No. 77. Once again, the motion is unopposed. Plaintiff sought Defendants' consent to the receiver's removal, but Defendants did not respond. *See id.* at ¶ 7. Subsequently, on August 21, 2025, Plaintiff provided the Court with the receiver's final accounting concerning

his administration of the receivership. *See* Dkt. No. 79. Plaintiff's motion to terminate the receivership and discharge the receiver is now before the Court.

In diversity actions, it is well settled that the appointment of receivers is a procedural matter governed by federal law. *See, e.g.*, *Greystone Bank v. Tavarez*, No. 9-CV-5192, 2009 WL 10712899, *1 (E.D.N.Y. Dec. 17, 2009) (quoting *Bristol Oaks, L.P. v. Werczberger*, No. 95-CV-3973, 1996 WL 19207, *1 (E.D.N.Y. Jan. 2, 1996)); *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012) (citing *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)). It follows that federal law also governs termination of receiverships. *See Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291-93 (11th Cir. 1998) (summarizing the consensus among federal courts that appointment of a receiver is a procedural issue governed by federal law and discussing "the primacy of federal law" in receivership cases). District courts have discretion on whether to terminate a receivership. *See S.E.C. v. Morgan Mezzanine Fund Manager LLC*, No. 1:19-CV-661, 2023 WL 11988727, *2 (W.D.N.Y. Jan. 10, 2023) (quoting *Baliga v. Link Motion Inc.*, No. 18-CV-11642, 2022 WL 2531535, *16 (S.D.N.Y. Mar. 9, 2022)). "The decision . . . turns on the facts and circumstances of each case. It is generally held that a receivership should be dismissed when the reason for the receivership ceases to exist." *Id.* (internal quotation marks omitted). Completion of the receiver's duties is an indicator that the receivership has served its purpose and may be terminated. *See id.* (terminating receivership where the receiver had completed the agreed-upon work and provided the court with a final accounting).

Plaintiff and Defendant Chenango Place, then-owner of the property, were the named parties to the stipulated appointment of the receiver. *See* Dkt. No. 53 at 1. The parties noted that the receivership was "warranted by the circumstances[,]" *id.* at ¶ 1(b), and cited the applicable

3

mortgage document, which gives the lender authority to appoint a receiver if the borrower defaults on the secured loan, *see* Dkt. No. 1-2 at 26, ¶ 3(c)(ii). The parties also agreed that the receiver's term would run until the Court ordered its termination. *See* Dkt. No. 53 at ¶ 2(a). The receiver had the authority to, *inter alia*, collect rent from tenants on the property; take action to maintain and manage the property; hire accountants, contractors, and other personnel to maintain and manage the property; commence or defend lawsuits pertaining to the property; pay taxes and insurance premiums related to the property; and keep a record of all expenses associated with the property. *See id.* at ¶ 3. Likewise, Defendant Chenango Place agreed to turn over keys, service contracts, ledgers, and other essential materials to the receiver. *See id.* at ¶ 4. It also agreed not to interfere with the receiver's work. *See id.* at ¶ 5.

Plaintiff now owns the property and is the party seeking termination of the receivership, *see* Dkt. No. 77; Dkt. No. 78 at ¶ 2, which Defendants do not oppose. The Court does not discern from the record any reason why the receivership has not served its purpose. Therefore, the Court determines that the receivership is no longer necessary, and termination is appropriate.

At the close of a court-appointed receivership, "'[a] receiver . . . who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred. The amount . . . is to be determined by the court in the exercise of its reasonable discretion.'" *Morgan Mezzanine*, 2023 WL 11988727, at *1 (quoting *S.E.C. v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008)); *see also Baliga*, 2022 WL 2531535, at *19 (citations omitted) (recognizing that, to ensure the receiver is compensated, courts normally wait until after the receiver has submitted an accounting to terminate the receivership). Courts consider factors such as "the complexity of problems faced, the benefits to the receivership estate, the quality of

4

the work performed, and the time records presented." *Byers*, 590 F. Supp. 2d at 644 (internal quotation marks omitted).

When the receiver was appointed, the parties stipulated to "a monthly receiver fee not to exceed $5,000.00," plus "reimbursement for any property management fees paid to an unaffiliated property manager." Dkt. No. 53 at ¶ 1(c).  The receiver requests $85,000 in fees: $5,000 per month from April 2024 to August 2025.  *See* Dkt. No. 79-2 at 2.  However, the receiver's accounting records span only from May 1, 2024, to July 31, 2025.  *See* Dkt. No. 79-1 (detailing rental income, utility costs, tax and insurance expenditures, contract service payments, and other financial activity of the receivership account during the specified period).  Thus, in light of the stipulated monthly rate and Defendants' failure to object, the Court applies the $5,000 monthly rate and multiplies it by fifteen, for a total receivership fee award of $75,000.

After carefully reviewing the entire record in this matter and the applicable law, the Court hereby

**ORDERS** that Plaintiff's motion to terminate the receivership and discharge the receiver (Dkt. No. 77) is **GRANTED**; and the Court further

**ORDERS** that $75,000 in receivership funds be paid to the receiver; and the Court further

**ORDERS** that the receivership is **TERMINATED**; and the Court further

**ORDERS** that the receiver is **DISCHARGED** of any further duties, obligations, or liabilities related to the receivership, except for those necessary to make the payment approved by the Court and to close the receivership account; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 27, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge